UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DESTINY SCHOON,<br><br>                    Plaintiff,<br><br>     vs.<br><br>FARMINGTON CASUALTY COMPANY;<br>GALLAGHER BASSETT SERVICES, INC.,<br><br>                    Defendants,<br><br>EXAMWORKS, LLC,<br><br>                    Intervenor. | 5:24-CV-05002-ECS<br><br>ORDER GRANTING EXAMWORKS AND<br>DEFENDANTS' REQUESTS TO PREVENT<br>THE PRODUCTION OF CONFIDENTIAL<br>AND SENSITIVE MEDICAL<br>INFORMATION OF INDIVIDUALS<br>UNRELATED TO THIS LAWSUIT |

Plaintiff, Destiny Schoon, filed a lawsuit in this Court pursuant to 28 U.S.C. § 1332 alleging state-law claims related to her workers' compensation injury. Doc. 1. She sues her employer's insurer, Farmington Casualty Company (Farmington), and Farmington's third-party administrator for its claims management program, Gallagher Bassett Services, Inc. (Gallagher Bassett). Id. ¶¶ 2–5. Currently pending before this Court is Intervenor ExamWorks, LLC's (ExamWorks) and Defendants' requests to prevent the production of confidential and sensitive medical information. Docs. 37, 41.

## I.     Factual Background[1]

On May 7, 2015, Schoon injured herself while hanging advertisements for her job at News America Marketing. Doc. 1 ¶ 8. On May 8 and 12, 2015, Schoon had chiropractic

---

[1] This Court recites a brief factual background as alleged in Schoon's Complaint and the submitted briefs. This inclusion is solely to provide context for the pending requests and is not intended to adopt the facts as true.

adjustments to alleviate her neck and shoulder pain, and she was referred to an orthopedic center to determine whether more serious treatment was required. Id. ¶¶ 9–11. A physician's assistant at the orthopedic center prescribed physical therapy, and Schoon attended multiple physical therapy appointments until she was referred to Dr. Lawlor for treatment. Id. ¶¶ 13, 15. After learning about Schoon's injury and symptoms, Dr. Lawlor ordered a cervical MRI and prescribed more physical therapy. Id. ¶¶ 16–17. "The MRI results showed a broad-based disc herniation at C5-6 which impinged on the right ventral hemicord." Id. ¶¶ 18, 20, 22.

Around that time, Schoon's employer indicated that her work injury claim was accepted for her right shoulder only and asked Dr. Lawlor to send records about the need for more physical therapy for her shoulder and treatment for her neck. Id. ¶ 19. The next day, Dr. Lawlor sent a fax to Gallagher Bassett Senior Claim Representative Jorna Chapple informing her about the MRI results and opining that "these findings are consistent with [Schoon's] stated onset of pain and consistent with her need for ongoing physical therapy to specifically address the neck as it relates to her shoulder pain." Id. ¶ 21; Doc. 44-1 at 5:12. Dr. Lawlor referred Schoon to Dr. Johnathan Wilson at Black Hills Neurosurgery and Spine, and "Dr. Wilson recommended a C5-6 cervical disc arthroplasty." Doc. 1 ¶¶ 23–24. But the insurer refused to authorize surgery until Schoon attended an independent medical examination (IME). Id. ¶ 25. Gallagher Bassett sought an IME through IME vendor ExamWorks. Doc. 41 at 3. ExamWorks advised Chapple "that the closest available provider who would conduct an examination was Dr. [Jeffrey] Nipper." Id.

On January 21, 2016, Dr. Nipper conducted the IME on Schoon. Doc. 1 ¶ 26. On February 17, 2016, Dr. Nipper issued his IME report, in which he opined that (1) Schoon's shoulder strain was resolved by approximately six weeks following the injury, (2) Schoon was at maximum medical improvement, (3) Schoon "was entitled to no impairment," and (4) Schoon

2

"needed no further treatment." Id. ¶¶ 26–28.  On February 24, 2016, relying on Dr. Nipper's IME opinion, the insurer denied further workers' compensation benefits for Schoon, without petitioning the South Dakota Department of Labor (SDDOL) for approval.  Id. ¶¶ 29–31. However, on May 5, 2016, Schoon underwent surgery with Dr. Wilson and continued to have conservative treatment, which included physical therapy, medications, and injections.  Id. ¶¶ 32–33.

On November 28, 2016, Schoon filed a petition for hearing with the SDDOL.  Id. ¶ 34. On January 20, 2017, Schoon's employer and the insurer responded, denying that Schoon's 2015 work injury was a major contributing cause of her continuing neck injuries.  Id. ¶ 35.  On September 23, 2020, the SDDOL held a hearing on the merits.  Id. ¶ 36.  In January 2021, Administrative Law Judge Michelle Faw issued a decision approving Schoon's request for benefits, and later in March 2021, Judge Faw entered an order requiring Defendants to pay Schoon $101,797 for past medical expenses and prejudgment interest.  Id. ¶¶ 37–38.  Schoon's employer and insurer appealed the SDDOL's decision to the Sixth Circuit of the South Dakota Unified Judicial System, and the circuit judge affirmed the administrative law judge's decision. Id. ¶¶ 40–42.  Schoon's employer and insurer appealed to the South Dakota Supreme Court, which affirmed the Circuit Court's order.  Id. ¶¶ 43–44; see generally News Am. Mktg. v. Schoon, 984 N.W.2d 127 (S.D. 2022).  Schoon alleges Defendants have refused to comply with the court orders and failed to pay her the ordered amount.  Doc. 1 ¶ 48.

## II.    Procedural Background

On January 12, 2024, Schoon filed her Complaint against Defendants Farmington and Gallagher Bassett alleging state-law claims for bad faith and unfair and deceptive practices, civil conspiracy, and intentional infliction of emotional distress, and requesting punitive damages.

See generally id. Relevant to ExamWorks' current request is Schoon's claim that "Defendants selected and used Dr. Nipper knowing he is biased in favor of insurance companies, and the vast majority of the time he issues fully favorable opinions for insurance companies, which they use as a pretense to deny valid worker's compensation claims." Id. ¶ 60(e). Due to the sensitive nature of the relevant documents and discovery for such claims, the parties jointly moved for a protective order limiting the use and disclosure of confidential information, including information protected by the Health Insurance Portability and Accountability Act of 1996; this Court granted the joint motion. Docs. 14, 15.

Schoon sought information about her IME and other IMEs conducted by Dr. Nipper. Gallagher Bassett allegedly was not able to programmatically search its files by doctor name due to limitations in its electronic data system. Doc. 25 at 3. Thus, Schoon served a subpoena on ExamWorks seeking information regarding her IME and more broadly about other IMEs conducted by Dr. Nipper along with additional information about other claims reviewed by ExamWorks for Farmington and Gallagher Bassett. Doc. 20-1. ExamWorks filed a non-party motion to quash subpoena and motion for a protective order, Doc. 20, and Schoon opposed the motion, Doc. 21. On May 9, 2025, this Court held a hearing. Doc. 35. Ultimately, this Court ordered ExamWorks to:

> (1) produce a list identifying Gallagher Bassett claim numbers for all workers' compensation files in which Dr. Nipper has prepared a written independent medical examination report or a written medical record review for Gallagher Bassett within Iowa, Minnesota, North Dakota, South Dakota, and Wisconsin from 2015 through 2019. . . .

> (2) set forth by declaration Dr. Nipper's financial compensation from ExamWorks, LLC for independent medical examinations and record reviews on work undertaken for Gallagher Bassett's worker's compensation files in Iowa, Minnesota, North Dakota, South Dakota, and Wisconsin between 2015 and 2019. . . .

(3) set forth by declaration Dr. Nipper's financial compensation for his work on Plaintiff Destiny Schoon's individual file. . . . [and]

(4) produce its file for Plaintiff Destiny Schoon's independent medical examination.

Doc. 36 at 1–3 (numeration added).

Upon receipt of ExamWorks' list, Gallager Bassett was responsible for further challenges to the discovery of Dr. Nipper's reports or was required to produce the reports. Id. at 2. Because Gallagher Bassett advised that its objections to discovery were not before this Court during the May 9, 2025 hearing, "the Court . . . decided to give Gallagher Bassett an opportunity to make any objections it deem[ed] appropriate, on grounds of relevance or otherwise, after it ha[d] an opportunity to review the reports at issue." Id. (footnote omitted). Thus, this Court reserved ruling on relevance of every document but held that "the subpoenaed information [was] sufficiently relevant to require ExamWorks, LLC to produce a list identifying Gallagher Bassett claim numbers for all workers' compensation files in which Dr. Nipper has prepared a written independent medical examination report or a written medical record review for Gallagher Bassett within the temporal and geographical restrictions" articulated in its Order. Id. at 2 n.2.

Thereafter, ExamWorks learned of Gallagher Bassett's intention to produce heavily redacted versions of the identified reports. Doc. 38 at 2. ExamWorks then moved to intervene for the limited purpose of preventing the production of confidential "medical reports prepared by Dr. Jeffrey Nipper for patients wholly unrelated to this lawsuit" (the Nipper reports). Id. at 1; see also Doc. 37. This Court granted ExamWorks motion to intervene, Doc. 39, and the parties briefed the discovery concerns. Oral argument was requested by ExamWorks, and another hearing was held on August 13, 2025. Doc. 51.

**III.    Request to Prevent the Production of Confidential and Sensitive Medical Information**

ExamWorks requests that this Court enter an order to prevent the production of the

Nipper reports to Schoon.  Docs. 37, 38.  Likewise, Farmington and Gallagher Bassett now

request this Court enter an order preventing production of the Nipper reports as well.[2]  Doc. 41.

Because all parties' objections and arguments have been fully briefed, this Court now considers

the relevance and other discovery objections to the Nipper reports.

**A.    Legal Standard**

The Federal Rules of Civil Procedure govern discovery disputes in diversity of

citizenship cases under § 1332.  Bradshaw v. FFE Transp. Servs., 715 F.3d 1104, 1107 (8th Cir.

2013) (citations omitted).  Federal Rule of Civil Procedure 26(b)(1) establishes the scope of

discovery for civil cases in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of discovery
> is as follows: Parties may obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in evidence to
> be discoverable.

Fed. R. Civ. P. 26(b)(1).  Rule 26(b) provides an extremely broad scope for discovery.  8 Wright

& Miller's Federal Practice & Procedure § 2007 (3d ed. 2025).  But courts must limit the

frequency or extent of discovery if "the discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

---

[2] To be clear, the only issue addressed by this Court in response to the pending motions is the discoverability of IME reports prepared by Dr. Nipper that both pre- and post-dated the denial of Schoon's workers' compensation claim.

Further, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Discovery is relevant if it is "probative of the 'claim or defense' that a party is trying to establish, or at least aimed at the discovery of evidence that could be." Stecklein v. Experian Info. Sols., Inc., 113 F.4th 858, 861 (8th Cir. 2024) (quoting Fed. R. Civ. P. 26(b)(1)).

## B.    Discussion

ExamWorks and Defendants argue that the Nipper reports are not discoverable because (1) such evidence does not prove bad faith under South Dakota law, (2) the majority view discourages "batting-average" discovery, (3) access to the IME records of individuals unrelated to the case poses privacy concerns, and (4) a mini trial would be necessary for every additional IME report produced. This Court analyzes these arguments in turn.

### 1.    Bad Faith Under South Dakota Law and IME Reports Post-Dating Schoon's Denial

ExamWorks and Defendants argue that the Nipper reports are not relevant to proving the denial of Schoon's benefits was done in bad faith because (1) reports conducted after the fact are not relevant to show Defendants' knowledge, (2) Gallagher Bassett's claims adjuster did not specifically select Dr. Nipper for the IME, and (3) Gallagher Bassett's system did not allow adjusters to locate or review the Nipper reports before selecting a medical reviewer. Doc. 38 at 1–4, 6–7, 12; Doc. 41 at 2, 7–8, 13; Doc. 42 at 1, 5–6; Doc. 48 at 1–2, 6.

Schoon indicated her intent to use the Nipper reports to prove Dr. Nipper's bias and bad faith on behalf of Defendants.[3]  Doc. 43 at 7–8. "A bad faith claim related to workers'

---

[3] Although Schoon also alleges claims for intentional infliction of emotional distress, civil conspiracy, and punitive damages, none of the parties appear to allege that the Nipper reports are relevant to any claims other than bad faith.

compensation . . . exists when an insurer breaches its duty to deal in good faith and fairly when processing a workers' compensation claim." Hein v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007). To show bad faith in denying a workers' compensation claim, the insured must show: (1) "an absence of a reasonable basis for denial of policy benefits" and (2) "the insurance carrier's knowledge or reckless disregard of [the lack of] a reasonable basis for denial." Id. at 236 (cleaned up) (citing Champion v. U.S. Fid. & Guar. Co., 399 N.W.2d 320, 324 (S.D. 1987)); Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs., 886 N.W.2d 322, 324 & n.1 (S.D. 2016) (citation omitted). "[K]nowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." Champion, 399 N.W.2d at 324.

For claims that the insurer acted in bad faith based on the failure to conduct a reasonable investigation concerning the claim, "[t]he question of whether the insurer's actions were unreasonable or whether the claim was fairly debatable must be viewed at the time the insurer made the decision to deny or litigate the claim, rather than pay it." Dakota, Minn. & E. R.R. Corp. v. Acuity, 771 N.W.2d 623, 630 (S.D. 2009) [hereinafter Acuity]; see also id. at 632 ("The question for bad faith is whether the insurer's investigation or decision to deny a claim was unreasonable and was made in knowing or reckless disregard of the facts at the time the insurer made its decision to litigate rather than to settle."). Courts determine bad faith for denial of

---

See Doc. 43 at 7–8 (arguing the Nipper reports are relevant to prove the elements of bad faith); Doc. 45 at 6–7 (arguing the Nipper reports are relevant to prove the elements of bad faith). "[T]he party requesting discovery bears the initial burden of showing how the requested information is important to the issues and resolution of the case." Humphreys & Partners Architects, LP v. Com. Inv. Props., Inc., No. 4:19CV3046, 2020 WL 3971604, at *4–5 (D. Neb. July 14, 2020). Even though the parties have not briefed or argued this issue, it is undisputed that Schoon's counsel has already read and reviewed multiple reports prepared by Dr. Nipper and has sworn testimony from Dr. Nipper admitting that he finds for the insurance company the vast majority of the time. See infra at 15–16. Thus, the Nipper reports are duplicative and are not proportional to Plaintiff's discovery needs for her non-bad faith claims.

8

workers' compensation benefits based on the facts available to the insurer at the time it made the decision to deny coverage. <u>Walz v. Fireman's Fund Ins. Co.</u>, 556 N.W.2d 68, 70 (S.D. 1996) (citing <u>Isaac v. State Farm Mut. Auto. Ins. Co.</u>, 522 N.W.2d 752, 758 (S.D. 1994)).

In the original subpoena Schoon served on ExamWorks, dated October 15, 2024, Schoon requested "[c]opies of all of Dr. Jeffrey Nipper's reports, records review reports, or other written reports of the 'independent medical examinations' that he performed for Farmington Casualty Company and Gallagher Bassett Services, Inc., from January 1, 2015, through the present." Doc. 20-1 at 3. After a hearing on ExamWorks' motion to quash, this Court held that the time and geographic period was limited to workers' compensation files where Dr. Nipper prepared written IME reports or medical record review for "Gallagher Bassett within Iowa, Minnesota, North Dakota, South Dakota, and Wisconsin from 2015 through 2019." Doc. 36 at 1.

ExamWorks and Defendants now contend the vast majority of the reports are irrelevant because, among other reasons, they occurred *after* the denial of Schoon's benefits in February 2016. ExamWorks and Defendants correctly articulate the standard for bad faith is whether the insurer knew of or recklessly disregarded "a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured" based on the information accessible at the time of denial. See <u>Walz</u>, 556 N.W.2d at 70 (quoting <u>Champion</u>, 399 N.W.2d at 324).

This Court finds the IME reports of individuals unrelated to this lawsuit and prepared by Dr. Nipper for Gallagher Bassett *after* the decision to deny Schoon's coverage are irrelevant to proving bad faith. If the touchstone of bad faith is what the insurer knew or recklessly disregarded at the time of its denial, IME reports prepared after the denial are not relevant, and the Court does not order their production in this case.

9

Moreover, Schoon's counsel acknowledged at oral argument that he already has in his possession "numerous" reports prepared by Dr. Nipper and "multiple" deposition transcripts of Dr. Nipper in workers' compensation cases. Mot. Hr'g 10:23:16–10:23:22, May 9, 2025 (audio). Plaintiff's counsel argues these reports and deposition transcripts demonstrate Dr. Nipper's bias in favor of insurance companies and against injured workers. Plaintiff's counsel may or may not be correct, and this will likely be up to a jury to decide. But based on Plaintiff's counsel's acknowledgement, producing additional IME reports of individuals unrelated to this case is not necessary for Plaintiff's legitimate discovery needs. Plaintiff's counsel already has voluminous information on Dr. Nipper in his possession, and he is free to depose Dr. Nipper in this matter about his history of performing IMEs for ExamWorks and other relevant topics. Further, this Court has already ordered the production of the amount of money Dr. Nipper earned on the Schoon file and on all his files with ExamWorks from 2015 through 2019. Doc. 36 at 1–3. This is enough, in the Court's opinion, and it is not necessary to order the production of IME reports that post-date the 2016 denial of Schoon's claim.[4]

ExamWorks and Gallagher Bassett also argue that all of the Nipper reports for unrelated individuals are not relevant because Gallagher Bassett's system did not allow it to locate, review, or search for prior IME reports prepared by a particular doctor. Doc. 38 at 3–4, 7; Doc. 41 at 2, 7–8; Doc. 42 at 5–6; Doc. 48 at 2, 6. Gallagher Bassett Assistant Vice President Bronwyn Kossmann stated under penalty of perjury that "[t]here is no search methodology [to identify claims in which Dr. Nipper wrote a report] within Gallagher that could be used to electronically

---

[4] The South Dakota Supreme Court has instructed that "an insurer may have an obligation to timely reassess its initial decision denying coverage based upon information received subsequent to the initial decision," Acuity, 771 N.W.2d at 633 (citing Walz, 556 N.W.2d at 71), but this Court does not read such a holding to make discoverable under the facts of this case IME records for unrelated individuals that were prepared after the decision to deny Schoon's coverage.

search for such a topic. The Gallagher computer system does not allow a search of an individual doctor's name other than by one file at a time." Doc. 41-2 ¶ 8. Further, Gallagher Bassett's claim representative stated in her deposition that she did not specifically select Dr. Nipper to perform the IME. Doc. 41-1 at 12 (deposition page 86:6–23). But Schoon asks this Court to disregard the testimony of the former-claim representative, Jorna Chapple, because she later testified that she could not remember whether she picked Dr. Nipper or if he was assigned to her. Doc. 43 at 10 (citing Doc. 44-1 at 87:16–22).

Chapple's lack of memory, however, does not undermine Kossmann's sworn statement, let alone make IME reports of other individuals discoverable. Indeed, Chapple recalls nothing at all about Schoon's claim. Doc. 44-1 at 36:2–4. At the time she was deposed in 2024, she had not worked for Gallagher Basset since 2021 and given this lapse of time she was not comfortable testifying about Gallagher's claims process. Id. at 35:14–15, 36:5–13. Chapple's lack of memory, if anything, goes to her credibility at trial, as does the sworn statement of Kossmann. These statements under oath do not, however, make IME reports about non-parties to this lawsuit discoverable.

2.    **"Batting-Average" Discovery and IME Reports Pre-Dating Schoon's Denial**

ExamWorks and Defendants contend that the requested discovery of the Nipper reports, in the majority view, are found to be impermissible "batting-average" discovery. Doc. 38 at 11; see also Doc. 41 at 8–9 & n.4 (conveying Defendants' argument that "batting-average" discovery is impermissible and incorporating by reference ExamWorks' cited case law). One court has defined "'batting average' evidence" as "statistical data showing the number of claims a particular reviewer has evaluated and the percentage of those claims approved versus those denied." Mercer v. Unum Life Ins. Co. of Am., No. 3:22-CV-00337, 2023 WL 3131989, at *2

11

(M.D. Tenn. Apr. 27, 2023) (discussing "batting-average" discovery for a claim under the Employee Retirement Income Security Act of 1974). ExamWorks argues the majority view in other districts is that reports a medical provider prepares as insurance recommendations for individuals wholly unrelated to a lawsuit are not discoverable batting averages, regardless of whether the reports were prepared pre- or post-denial of the claim. Doc. 38 at 11 n.2 (collecting cases); Doc. 42 at 4–5 (collecting cases); Doc. 48 at 6 n.3 (collecting cases).[5] Under ExamWorks' argument, all IME reports of non-parties would be irrelevant and not discoverable.

The cases that ExamWorks cites appear to arise under the Employee Retirement Income Security Act of 1974 (ERISA), which generally limits court review to the administrative record and in limited circumstances permits discovery on narrowly tailored issues. See Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010) ("In ERISA cases, the general rule is that review is limited to evidence that was before the administrator." (citing LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan, 498 F.3d 805, 811 (8th Cir. 2007))); Farley v. Ark. Blue Cross & Blue Shield, 147 F.3d 774, 776 n.4 (8th Cir. 1998) (discussing that discovery or supplementation is needed very rarely for palpable conflict of interest or procedural irregularity because it will ordinarily be apparent on the face of the administrative record or stipulated to by the parties); Abram v. Cargill, Inc., No. 01CV1656(JMR/FLN), 2003 WL 1956218, at *2–3 (D. Minn. Feb. 10, 2003) ("Material probative evidence of bias must be introduced prior to expansion of the record. The predicate for discovery in these cases is a firm basis on which to consider the possibility of the independent medical examiner's bias or impropriety." (internal citation and quotation omitted)).

---

[5] ExamWorks and Defendants also cite to a medical malpractice case before the South Dakota Supreme Court, which held that "[a]llowing a fishing expedition through confidential non-party patient records cannot be permitted where there has not been a sufficient showing that they are reasonably likely to contain or lead to evidence relevant to the issues of the case." Ferguson v. Thaemert, 952 N.W.2d 277, 283 (S.D. 2020).

Instead of applying the "batting-average" discovery analysis used in the ERISA cases ExamWorks and Defendants cite, Schoon asks this Court to adopt the holdings of two bad faith cases from the District of South Dakota: Richter v. XL Insurance America Inc., 4:23-CV-04094-CCT, 2024 WL 3461643 (D.S.D. July 18, 2024) and Morris v. Pennsylvania Manufacturers' Association Insurance Co., 4:24-CV-04196-CCT, 2025 WL 2240799 (D.S.D. Aug. 6, 2025). In Richter, a plaintiff sued the insurer and Gallagher Bassett for denial of workers' compensation benefits in bad faith and requested all reports prepared by the doctor who conducted the IME, who was also Dr. Nipper. 2024 WL 3461643, at *1–2. Gallagher Bassett provided claim administration services and worked with ExamWorks to retain a medical provider. Id. at *1. Because Gallagher Bassett's system did not allow a search for records based on names of IME providers, Gallagher Bassett served a subpoena on ExamWorks, which refused to provide the information and brought a motion to quash the subpoena. Id. at *1–2. The magistrate judge, who the discovery motion was referred to, ultimately held that Gallagher Bassett satisfied the initial threshold to demonstrate relevance and ordered ExamWorks to "provide to Gallagher a list or data report . . . of all the matters on which Dr. Nipper has rendered an IME or a records review for Gallagher in the last ten years" in the states that comprise the Eighth Circuit. Id. at *2, 6. ExamWorks filed an objection to the magistrate judge's order, 4:23-CV-04094-CCT Doc. 61, but the parties ultimately settled the case before the district judge ruled on the objections and before the Nipper reports were turned over, 4:23-CV-04094-CCT Doc. 67.

In Morris, a plaintiff sued the insurer and Gallagher Bassett for denial of workers' compensation benefits in bad faith and requested all reports prepared by the doctor who conducted the IME. 2025 WL 2240799, at *1–3. The magistrate judge held that the plaintiff had met her initial relevance threshold. Id. at *5. Relying on the holding in Richter, the magistrate

13

judge encouraged Gallagher Bassett obtain a list from ExamWorks for the IMEs performed by the doctor and ordered Gallagher Bassett to provide all of the IMEs and record reviews that the doctor performed in workers' compensation cases in the last five years in the states that comprise the Eighth Circuit. Id. at *3–5. Gallagher Bassett filed an objection to the magistrate judge's order, which is currently pending before the district judge. 4:24-CV-04196-CCT Doc. 36.

Defendants and ExamWorks cite to Thompson v. National Union Fire Insurance Co., CIV. NO. 18-4011, 2021 WL 1966693 (D.S.D. May 17, 2021), which ExamWorks alleges supports a conclusion contrary to the holdings in Richter and Morris.[6] Doc. 48 at 2–6; see also Doc. 38 at 3, 6–7, 12; Doc. 41 at 8–9; Doc. 42 at 2–3, 5. In Thompson, a plaintiff sued the insurer for denial of workers' compensation benefits in bad faith. 2021 WL 1966693, at *1. A third-party IME vendor provided the plaintiff with redacted IME reports that the doctor had provided in other cases, and the plaintiff sought to introduce expert testimony that the doctor was biased because he found for the insurance company in ninety percent of his prior cases. Id. at *8. The judge noted:

> If only 5 of 151 IMEs previously performed by the physician favored the patients, that can be relevant evidence on whether or not a physician is biased. However, whether or not a physician is biased in favor of insurance companies is not relevant to a claim for bad faith denial of workers' compensation benefits under South Dakota law if there is no corresponding evidence that the insurer knew or recklessly disregarded evidence of physician bias. In South Dakota, to show a bad faith denial of workers' compensation benefits, the plaintiff must demonstrate not only that there is an absence of a reasonable basis for denial of policy benefits; but also that the insurer knew or recklessly disregarded the lack of a reasonable basis for denial.

Id. at *10. Further,

---

[6] The magistrate judge in Richter and Morris distinguished Thompson because "[i]n Thompson, the IME doctor had never previously been hired by the defendant insurance company prior to his being hired in plaintiff's case. . . . Thus, the evidence of other IMEs the doctor had given did not involve the defendant in Thompson." Richter, 2024 WL 3461643, at *4 (emphasis omitted); Morris, 2025 WL 2240799, at *5. In Richter and Morris, "the evidence [sought] concerns only those IME opinions given by [the doctor] to defendants. That distinguishes the evidence discussed in the Thompson case." Richter, 2024 WL 3461643, at *4 (emphasis omitted); Morris, 2025 WL 2240799, at *5.

14

[t]he question in [Thompson] was not whether [the doctor] was biased. Indeed, Thompson does not argue that because of Dr. Cederberg's alleged bias, National Union was reckless in relying upon all of Dr. Cederberg's IMEs of Thompson, including the first IME report that was favorable to her. Rather, the issue . . . is whether it was reckless for [insurer] to not inquire into the question of medical examiner bias before cutting off benefits when the second IME by the same physician was decidedly different than his first IME with arguably no clear explanation for the change in opinion.

Id. at *11. "When a question of IME examiner bias is presented, an insurer need not always examine all previous IME reports of the physician." Id. Instead, "the IME physician could be asked for at least his own compilation of what percentage of time he essentially finds in favor of or against the claimant on IMEs." Id.

Schoon argues that ExamWorks mischaracterized Thompson because Thompson went to the admissibility of IME reports, not discoverability. Doc. 45 at 8. Schoon also argues that Thompson is not applicable because the medical provider in that case had not previously conducted an IME for the insurance company. Id. at 9. Schoon correctly points out that the court in Thompson noted, "evidence that an IME physician has made findings adverse to claimants in a significant majority of IMEs performed may be relevant to the issue of bias." Id. (quoting Thompson, 2021 WL 1966693, at *10). But merely a high denial rate does not automatically show bias. Deciding whether actual IME reports of non-parties to this case should be produced in discovery requires a more nuanced analysis.

As the court noted in Thompson, evidence that an IME physician has made findings adverse to claimants in a significant majority of IMEs may be relevant to bias. But does that mean IME reports of non-parties need to be produced in discovery? Not in this case. This Court finds that the production of actual IME reports of non-parties to this case is not proportional to Plaintiff's discovery needs. This is because Schoon has already received sworn testimony from Dr. Nipper that he finds in favor of the insurer the vast majority of the time. As noted

previously, during the May 9, 2025 hearing, Schoon's counsel stated, "I've read numerous reports of Dr. Ripper -- Dr. Nipper, I've deposed him multiple, multiple times." Mot. Hr'g 10:23:16–10:23:22, May 9, 2025 (audio). Plaintiff's counsel further stated, "I took his deposition in multiple cases, including this one. . . . [A]lmost exclusively, [Dr. Nipper] testified he does IMEs only for insurance companies or defense attorneys. . . . And then he testified the vast majority of the time, he gives opinions that are fully favorable to the insurance company and against the injured worker. The vast majority of the time. And he's testified to that multiple times now." Id. 10:24:23–10:25:00. Based on this representation, Plaintiff already has abundant evidence allegedly demonstrating Dr. Nipper's supposed bias. It is not necessary or proportional, therefore, to produce reports from unrelated IMEs.

Notably, ExamWorks and Gallagher Bassett also emphasize that Dr. Nipper has already testified in Schoon's underlying workers' compensation case about his frequency of performing IMEs, compensation for IMEs, and the tendency with which he finds for the insurance company. See Doc. 38 at 12 ("Dr. Nipper already testified under oath that he finds in favor of insurance companies more often than not."); Doc. 41 at 4, 8 (arguing that Dr. Nipper has already testified about the frequency and costs for performing IMEs for insurers or insurance related vendors and about his outcomes). Specifically, Dr. Nipper testified in his deposition in the underlying workers' compensation case that "the vast majority of the time [he] issue[d] reports that [were] favorable to the insurance company and against the injured worker." Doc. 41-3 at 5 (deposition page 24:1–4). Thus, disclosure of non-party IMEs would not be necessary or proportional because Schoon already has testimony from Dr. Nipper affirmatively stating that he usually finds for the insurer.

3.    **Privacy Concerns**

ExamWorks and Defendants strongly assert that the Nipper reports should not be turned

over because they contain confidential and sensitive medical information for individuals wholly

unrelated to this lawsuit.  Doc. 38 at 1–2, 10; Doc. 41 at 9; Doc. 42 at 1; Doc. 48 at 1–2, 9–10.

Schoon argues that privacy concerns are eliminated because redactions, protective orders, and

other safeguards can limit the exposure of information and because "anonymous nonidentifying

information is not protected by the physician-patient privilege because there is *no patient* once

the information is redacted." Doc. 43 at 13 (quoting Wipf v. Altstiel, 888 N.W.2d 790, 794 (S.D.

2016)); Doc. 45 at 11 (quoting Wipf, 888 N.W.2d at 794).  This Court does not agree that a

physician/patient privilege is applicable to IMEs prepared in response to a request for workers'

compensation benefits.  Sowards v. Hills Materials Co., 521 N.W.2d 649, 653–54 (S.D. 1994)

(South Dakota statutory law "clearly indicate[s] the legislature did not extend the

physician/patient privilege to relevant medical information in worker's compensation

proceedings.").  But a lack of physician/patient privilege does not remove the sensitive nature of

the records at issue.

This Court acknowledges the significant concern in requiring disclosure of sensitive

medical information of non-consenting individuals' who are wholly unrelated to this lawsuit.

This Court also recognizes the protective order entered in this case and redactions could limit the

potential for disclosure of sensitive information.  Regardless, this Court finds that the burden of

requiring such discovery and redactions, the risk of disclosure of sensitive medical information

of unrelated individuals, and the invasion of privacy of individuals wholly unrelated to this

lawsuit are not proportional to Schoon's discovery needs.  Redactions, even substantial

redactions, can only limit the identity of a person so much.  In many cases, complete anonymity

with substantial redactions cannot be achieved.[7] Schoon already has sufficient and substantial information about Dr. Nipper's alleged bias. Given the privacy risks involved, the Court will not order the production of IME reports of non-parties in light of the material Schoon already has in her possession.

### 4. Mini Trials

Finally, while not directly a deciding factor at this stage, this Court is concerned about the workability at trial should an abundance of IME reports in unrelated cases be produced. ExamWorks and Defendants have identified a logistical issue for trial regarding the Nipper reports because "Defendants would be forced to essentially have a mini trial over every report so that Dr. Nipper could defend his medical opinions contained in each report on these unrelated individuals." Doc. 41 at 9; see also Doc. 38 at 5; Doc. 42 at 7.

Schoon argues that ExamWorks and Defendants mischaracterize what the evidence will show and will not require mini trials. Doc. 45 at 10. Schoon instead anticipates that the Nipper reports will show a "trend of favoritism towards an insurer, will contain identical passages not tied to specific facts of the case, and will find the same or similar predictions for recovery timelines and maximum medical improvement, which will undermine the insurer's reliance on the doctor's reports as a basis for denying claims." Id. Schoon cites to Gowan v. Mid Century Insurance Co., in which the magistrate judge recognized that IME reports prepared by a doctor were relevant, and "[i]f all 11 [IME] reports were favorable to [insurer], or if the reports contain

---

[7] The South Dakota Supreme Court recognized significant concern about disclosure of identifying information with en masse production of medical records of unrelated patients. See Ferguson, 952 N.W.2d at 285–86 ("It is hard to conceive of how information from another patient's record could be used at trial without one party or the other seeking to use personal identifying information (e.g., medical history, body composition, communicated preferences) to explain or defend the type of incision made on a patient. This type of information goes well beyond 'mere descriptions of diagnoses and treatments that make no reference to a patient.' [Wipf,] ¶ 10, 888 N.W.2d at 794. Instead, one would need to delve into the specifics of each patient's record to make legitimate comparisons, much of which would be encompassed in the 'exchange of confidential information' between doctor and patient that is privileged under SDCL 19-19-503. See id.").

identical passages suggesting rote reiteration not tied to the specific facts of the case, that would certainly undermine [insurer's] reasonable reliance on [the IME doctor's] report in [plaintiff's] case as a basis for denying his claim." 309 F.R.D. 503, 516 (D.S.D. 2015). The court in <u>Gowan</u> also noted the insurer's argument that the IMEs would require mini trials was premature and was a determination for admissibility at trial. <u>Id.</u>; <u>see also</u> <u>Stedillie v. Milford Cas. Ins.</u>, 4:23-CV-04048-KES, 2024 WL 449630, at *6–7 (D.S.D. Feb. 6, 2024) (citing <u>Gowan</u> to discuss relevance of IME doctor reports for unrelated individuals).

However, courts have sometimes considered whether mini trials would be necessary when determining discoverability. <u>See</u> <u>Hirschman v. Agraria Ins. Co.</u>, 4:23-CV-04123-KES, 2024 WL 4068745, at *6 (D.S.D. Sept. 5, 2024) (recognizing in a bad faith weather-related property damage insurance claim that the party sought discovery to contact former or current customers of the insurer or its investigators to fill discovery gaps "[a]nd if they filled those gaps, the district court would then be required to conduct mini trials as to the reasonableness of past denials, which would then require [insurer] to defend itself over claims not part of this lawsuit that occurred up to (now reduced to five) years ago. This is more of a burden than the court will allow." (internal citation omitted)); <u>Dowdy v. Geico Gen. Ins. Co.</u>, Case No. 4:16-CV-303 (CDL), 2017 WL 10765264, *3–4 (M.D. Ga. June 30, 2017) (considering whether evidence of prior cases would require mini trials as a factor at the discovery stage for a claim against an insurer for bad-faith refusal to settle a claim); <u>Clark v. Wilkin</u>, Civil No. 2:06cv00693, 2008 U.S. Dist. LEXIS 14861, at *3–4 (D. Utah Feb. 26, 2008) (discussing at the discovery phase whether production of other IMEs by the medical provider would lead to mini trials, which would distract from the central issues of the case, but also noting that the discovery request was untimely).

After careful consideration, this Court finds the Nipper reports to not be proportional to the needs of the case to warrant discovery. This Court already recognized that merely a high denial rate does not automatically show bias. See supra at 15. It may. It may not. But even if the reports did contain similar recovery timelines or other unspecific facts that are reiterated, it would likely require a mini trial to distinguish between injuries and facts to determine whether the estimated timelines or unspecified facts were incorrect or inapplicable in the other cases. To the extent that any of this information is relevant to bad faith or bias, Plaintiff's counsel has already informed the Court that he has read IME reports by Dr. Nipper and taken Dr. Nipper's deposition on multiple occasions, and Plaintiff's counsel informed the Court in these prior cases, Dr. Nipper included roughly the same timeline and pedantic information. Thus, Schoon already has sworn testimony from Dr. Nipper, which is significantly less intrusive and is more proportional to the needs of the case.

## IV.    Conclusion

Based on the foregoing, this Court determines that the Nipper reports for individuals wholly unrelated to this lawsuit and prepared after the decision to deny Schoon coverage are irrelevant to Schoon's claims for bad faith under Rule 26(b). The Nipper reports prepared at or before the denial of Schoon's claims are not proportional to the Plaintiff's discovery needs under Rule 26(b). Accordingly, this Court does not order the production of the Nipper reports for unrelated individuals. Thus, it is

ORDERED that ExamWorks and Defendants' requests to prevent production of confidential and sensitive medical information of individuals unrelated to this lawsuit, Docs. 37 and 41, are granted. It is further

ORDERED that Gallagher Bassett is not required to produce the Nipper reports or

information contained therein for IMEs conducted on individuals other than Schoon.

DATED this 4 day of December, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

21